**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0025n.06

Case Nos. 18-3934/3937/4000

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KCI USA, INC., | ) | **FILED**<br>Jan 16, 2020<br>DEBORAH S. HUNT, Clerk |
|   Plaintiff - Appellee/Cross - Appellant, | ) | |
| | ) | |
|     v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| HEALTHCARE ESSENTIALS, INC., | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
|   Defendant, | ) | |
| | ) | |
| MICHAEL R. RASOR, KOMLAVI ATSOU, and | ) | |
| ERIC J. WEISS; CAVITCH, FAMILO & | ) | **O P I N I O N** |
| DURKIN CO., LPA, | ) | |
| | ) | |
|   Interested Parties - Appellants/Cross - Appellees. | ) | |
| | ) | |

**BEFORE: MOORE, McKEAGUE, and GRIFFIN, Circuit Judges.**

**McKEAGUE, Circuit Judge.**

One thing is certain: discovery abuses by the defendants infected this case—seemingly beyond repair, leading to a default judgment against the defendants in the amount of $645,016,638. Less certain, however, were the procedural safeguards afforded before the imposition of sanctions on the defendants' attorneys due to those discovery abuses.

Cavitch, Familo & Durkin Co., LPA ("Cavitch") and three of its attorneys, Michael Rasor, Komlavi Atsou, and Eric Weiss (referred to throughout as "the individual attorneys") appeal the district court's order granting Plaintiff KCI USA, Inc.'s motion for sanctions. The district court

found KCI was entitled to attorney's fees and costs, in the form of sanctions, from Cavitch and the individual attorneys for their representation of Defendant Healthcare Essentials, Inc. Because we find the individual attorneys were denied due process, including fair notice and a meaningful opportunity to be heard, we vacate the sanctions order against them and remand for further proceedings. Furthermore, because Cavitch's liability for the alleged discovery violations turns on the individual attorneys' conduct, we necessarily vacate the sanctions order against the firm and remand as well.

## I.  Background

KCI filed a complaint against defendant Healthcare Essentials in 2014, alleging deceptive trade practices, conversion, unfair competition, and tortious interference with prospective business relationships. KCI's complaint alleged a nationwide criminal enterprise where defendants Healthcare Essentials and owner Ryan Tennebar, among others, engaged in a pattern of theft and fraud with respect to KCI's VAC wound therapy systems. The district court found a myriad of discovery abuses throughout this "hotly contested" and ongoing case. These discovery abuses included egregious acts such as throwing KCI property into a dumpster, lying to the court, failing to turn over thousands of responsive emails, fabricating requested spreadsheets, creating fake invoices, and deleting information on electronic devices, among other discovery violations. The heart of this appeal, however, concerns the involvement of Cavitch and its attorneys in these abuses.

Cavitch was involved from the filing of the answer in 2014 until April 2016, when it withdrew as counsel. From the start, discovery was contentious. The district court was forced to be involved during the discovery process, and it twice ordered Healthcare Essentials to produce

the discovery requested by KCI. Yet Healthcare Essentials was still unresponsive. As a result, KCI twice moved for sanctions against Healthcare Essentials and Cavitch.

About two years into the litigation, Cavitch states it became aware of the defendants' fraud and theft. The emails showed a connection between Ryan Tennebar and former KCI employee Abel Cortez, who was purportedly stealing VACs for Ryan. Shortly after Cavitch's discovery of these emails, Ryan Tennebar sent a letter to Cavitch discharging the firm and explicitly invoking his Fifth Amendment right against self-incrimination. The letter also prohibited Cavitch from disclosing the troubling emails. Cavitch sought to withdraw as counsel and submitted an *ex parte* brief stating that it had developed an irreconcilable conflict with its client. But Cavitch did not attach the emails to the brief or disclose the ongoing crime, believing it couldn't because of Ryan Tennebar's invocation of his Fifth Amendment right. On April 15, 2016, the district judge issued an order granting the Cavitch attorneys leave to withdraw. In granting the motion, the district judge warned Cavitch that "should the Court find cause for doing so, [Cavitch] may be called upon to clarify, explain, or justify its prior actions as counsel in this case." In essence, despite no longer being counsel of record, Cavitch was on notice that its conduct could still be at issue.

Over the next several months, KCI continued to build its case and ultimately obtained a preliminary injunction against Healthcare Essentials. Despite insistence from the district court, Healthcare Essentials (now represented by new attorneys) still did not comply with discovery or the injunction. This led KCI to file a motion to show cause on July 21, 2016. The next day, the district judge held a status conference with counsel only. Cavitch was no longer counsel of record so no Cavitch attorney was present. During the status conference, Ryan Tennebar's new lawyer tried to shift blame to Cavitch, focusing on Cavitch's discovery misconduct. The judge instructed that Cavitch should appear at the next status conference if new counsel found that necessary. That

separate conference took place on August 5, 2016 and concerned the various discovery violations, including Cavitch's alleged involvement. Attorneys Atsou, Rasor, and Weiss from Cavitch were all present. The judge questioned Weiss regarding his and Cavitch's knowledge about the fraudulent discovery production. KCI then, on August 16, 2016, filed a motion seeking discovery relating to Cavitch's involvement in the discovery violations. Following this hearing and the discovery request regarding Cavitch's behavior, Cavitch filed a second *ex parte* brief to which it attached the troubling emails revealing Ryan Tennebar's theft and fraudulent behavior. After the submission of the second *ex parte* brief, the district court held a telephonic status conference to discuss Healthcare Essentials' continuing violation of a restraining order and other discovery abuses. During the conference, Attorney Atsou testified regarding Cavitch's involvement in the falsified spreadsheets.

After August 2016, Cavitch's involvement was largely an afterthought until November 2017, when the district court held a hearing on one of KCI's show cause motions. KCI finally obtained the mirrored hard drive of Ryan Tennebar's computer in October 2016, revealing the extent of the fraud and theft. Even so, discovery abuses continued and Healthcare Essentials still failed to comply with discovery orders and injunctions. As a result, KCI again filed a motion to show cause. The motion to show cause primarily concerned deletion of information stored on various electronic devices, failure to turn in electronic devices, and submission of false spreadsheets. Notably, the motion did not mention Cavitch, any Cavitch attorneys, or any of Cavitch's conduct.

The court scheduled a hearing on KCI's motion to show cause, and after being rescheduled several times due to a criminal trial against defendant Ryan Tennebar, the court set the hearing for November 9, 2017. Hours before the scheduled afternoon hearing, KCI filed a bench brief

attacking the Cavitch attorneys. The KCI brief described conduct previously discussed throughout past sanctions motions and conferences. The brief also raised new allegations concerning Cavitch's misrepresentations to the court. KCI's brief, however, neither sought sanctions from the individual attorneys nor mentioned the individual attorneys by name (apart from including testimony as an exhibit). Cavitch responded by filing a short brief and supporting affidavit stating Cavitch was ready to defend itself.

The hearing took place that afternoon. Cavitch did not appear. At the hearing, KCI discussed Cavitch's conduct at length. On the one hand, the district judge acknowledged that the sanctions against Cavitch were "[n]ot an issue, as far as I'm concerned, certainly not at this hearing." On the other, KCI stated it would be "directly critical of some of the actions taken by counsel" and it was "referring to the Cavitch law firm" (not the new lawyers). The judge thanked KCI for this distinction. Following the November 9 show cause hearing, KCI filed an omnibus motion for sanctions against Cavitch but not against the individual attorneys. KCI's motion attacked much of the behavior discussed at the November 9 show cause hearing. Cavitch filed its opposition and also requested an evidentiary hearing. And only in KCI's reply brief did KCI—in a footnote—mention it was seeking sanctions against the individual attorneys as well. The footnote read:

> The Opposition contends that Cavitch cannot be sanctioned under 28 U.S.C. § 1927. (ECF No. 341, p. 14). For the removal of any doubt, and as made clear in KCI's Omnibus Motion, the Court should sanction Michael Rasor, Komlavi Atsou, and Eric Weiss of the Cavitch firm—the same individuals who submitted affidavits with the Opposition (and, in fact attested to the statements made in the Opposition)—under 28 U.S.C. § 1927 for multiplying these proceedings unreasonably and vexatiously.

Without holding another hearing, the court issued its sanctions order on July 16, 2018, finding Cavitch and the individual Cavitch attorneys responsible for the discovery violations

mentioned throughout the omnibus motion and finding KCI was entitled to fees and costs from Cavitch and the individual attorneys. To determine the sanctions amount, the district court held a damages hearing. And finally, in an order denying Cavitch's motion for reconsideration, the district court determined that KCI was entitled to $365,200.67 in attorney's fees and costs against Cavitch, Attorney Rasor, and Attorney Atsou, and $ 290,488.30 against Attorney Weiss, all joint and several. Cavitch and the individual attorneys appeal separately.

## II. Analysis

We begin with analyzing the individual attorneys' appeal, given that the firm and individual attorneys appeal separately. The individual attorneys argue they were denied due process because they lacked notice and a meaningful opportunity to be heard. We agree.

An attorney can be sanctioned under Federal Rules of Civil Procedure 26(g)(3) and 37(b)(2)(C), 28 U.S.C. § 1927, and the court's inherent powers, as the district court did here. But there remain due process concerns in the context of sanctions, and a party or attorney must be afforded notice and an opportunity to be heard. *See Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 770–71 (6th Cir. 2019) (Rule 37); *Parrott v. Corley*, 266 F. App'x 412, 415 (6th Cir. 2008) (§ 1927); *Banner v. City of Flint*, 99 F. App'x 29, 37 (6th Cir. 2004) (inherent powers). We review due process claims de novo. *Parrott*, 266 F. App'x at 415 n.1.

*Notice*. Sufficient notice against Cavitch as a firm is not enough. While "formal notice detailing the penalties" is not required, KCI or the court had to provide notice that sanctions were being sought against the individual attorneys and not just the firm. *Banner*, 99 F. App'x at 37; *see also Wilson-Simmons v. Lake Cty. Sheriff's Dep't*, 207 F.3d 818, 822–23 (6th Cir. 2000). For example, a show cause order from a district court is one mechanism that gives an individual "specific notice of the sanctioning authority being considered and the conduct alleged to be

sanctionable." *Cook v. Am. S.S. Co.*, 134 F.3d 771, 775 (6th Cir. 1998) (internal quotations omitted); *see also Wilson-Simmons*, 207 F.3d at 822–23. But the district court provided no such notice here. Likewise, notice from an opposing party would suffice. *See In Re Royal Manor Mgmt., Inc.*, 652 F. App'x 330, 339 (6th Cir. 2016). For example, KCI could have specifically moved for sanctions against the individual attorneys in its original omnibus sanctions motion, making it clear that it was seeking sanctions against the individual attorneys in addition to seeking sanctions against the firm. But KCI did not. Mentioning the individual attorneys in a *footnote* of a reply brief—when previous filings and allegations had been directed at the "Cavitch Firm"—is not sufficient notice. Telling is KCI's reason for flagging the individual attorneys in that footnote: "For the removal of any doubt . . . the Court should sanction Michael Rasor, Komlavi Atsou, and Eric Weiss of the Cavitch firm." Doubt there was. And doubt is not enough to provide sufficient notice to the individual attorneys.

Additionally, the earlier warnings of sanctions and that Cavitch could still be on the hook are not enough. Previous motions for sanctions did not list the individual attorneys but were instead directed at "Defendant" and "Defendant's Counsel." The court's admonition when granting Cavitch's withdrawal that Cavitch's conduct could still come into play—stated a full two years before the sanctions order—was likewise not enough to put the attorneys on notice.[1] KCI's bench brief filed the morning of the November 9 hearing stated the purpose of the brief was to

---

[1] KCI argues that the court put Cavitch and the individual attorneys on notice that *both* Cavitch and the individual attorneys could be subject to sanctions. KCI points to the district court's statement that "[t]hey are signing under Rule 11 that they have given you everything that exists that they know of. Apparently, Mr. Tennebar said under oath that you have everything that they have, and you are finding that there is other stuff . . . . So they are going to have to answer for that. They are going to have to answer for it. So it is put up or shut up." (R. 111, # 1882). This is just a reminder that all attorneys sign pleadings, motions, and other papers under Rule 11—it is not notice of sanctions. KCI also points to the district court's withdrawal order. But there, the district court just stated that "[t]he Cavitch firm is on notice that, should the Court find cause for doing so, it may be called upon to clarify, explain, or justify its prior actions as counsel in this case." (R. 143, ## 2339-40). This is also not notice of sanctions; it is simply notice that Cavitch may have to explain its conduct at some later time.

discuss the prolonged and egregious discovery abuses perpetrated. But the substance of the brief did not mention any of the individual Cavitch attorneys by name; rather, it continually referred to the "Cavitch Firm." Moreover, KCI titled its omnibus sanctions motion "Plaintiff KCI, USA, Inc.'s Omnibus Motion for Sanctions Against Cavitch, Familo & Durkin Co., LPA" and explained that the "Motion for Sanctions against counsel is directed *only* at Cavitch, Familo & Durkin Co., LPA." (R. 333-1, # 5922 (emphasis added)). In the motion's conclusion, KCI requested the court to "sanction *Cavitch*" and require "*Cavitch* to pay KCI's reasonable attorney's fees and costs." It is one thing to believe your firm is going to be sanctioned and required to pay attorney's fees and costs. It is quite another to be informed that you—individually—could be on the hook for the sanctions. Without notice, the individual attorneys were denied due process.

*Opportunity to Be Heard*. Due process does not mandate a full evidentiary hearing before the imposition of sanctions. *Prime Rate Premium Fin. Corp.*, 930 F.3d at 771; *Cook*, 134 F.3d at 774–75. But a party or attorney facing sanctions must still have a meaningful opportunity to respond to the allegations against them. *Wilson-Simmons*, 207 F.3d at 822. The individual attorneys did not have that opportunity here.

The "adequacy of notice and hearing . . . turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 632 (1962). Due process "is a flexible concept and the particular procedural safeguards required will vary depending upon all the circumstances." *Cook*, 134 F.3d at 775 (quotation omitted).

At the very least, responsive briefing from each attorney could have provided the procedural safeguards necessary here. But under the circumstances as they were, the individual attorneys did not even have the opportunity to each file a brief in response to KCI's omnibus

sanctions motion since KCI did not mention it was seeking sanctions against the individual attorneys until a footnote in its reply brief.

All this said, even if Cavitch as a firm was afforded due process, that is not sufficient as to the individual attorneys. Cavitch's chances to defend itself can't be imputed to the individual attorneys. Interests can differ. Without notice and an opportunity to respond, the imposition of sanctions in this manner deprived the individual attorneys of due process.

Because we are remanding to the district court to allow the individual attorneys to file, at the very least, responsive briefing, we necessarily have to remand the Cavitch firm's appeal, since the firm's liability turns, in large part, on the individual attorneys' conduct.

Finally, if necessary on remand, the district court should consider in the first instance whether Federal Rules of Civil Procedure Rule 26(g)(3) and 37(b)(2)(C) even allow for sanctions against a firm, as opposed to individual attorneys. Our circuit has not weighed in on the issue. Alternatively, the district court should specify conduct on the part of the Cavitch firm that is sanctionable under the court's inherent powers.

For these reasons we **VACATE** and **REMAND** to the district court to provide the individual attorneys with an opportunity to be heard. We also **VACATE** and **REMAND** to the district court to reconsider whether the law firm can be sanctioned for its conduct as a result of the conclusions made on remand regarding the individual attorneys' conduct.